## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATERA, INC., | : | |
| Plaintiff/Counter-Defendant, | : | |
| v. | : | C.A. No. 20-125-LPS |
| ARCHERDX, INC., | : | |
| Defendant/Counter-Plaintiff. | : | |
| AMERANTH, INC., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 20-518-LPS |
| OLO INC., | : | |
| Defendant. | : | |
| VMWARE, INC., | : | |
| Plaintiff/Counter-Defendant, | : | |
| v. | : | C.A. No. 20-272-LPS |
| CIRBA INC. (d/b/a/ DENSIFY), | : | |
| Defendant/Counter-Plaintiff. | : | |

## MEMORANDUM ORDER

At Wilmington, this **13th** day of **October, 2020**:

WHEREAS, defendants in the above-listed cases filed Rule 12 motions to dispose of patent infringement claims on the bases that certain patent claims are invalid under 35 U.S.C. § 101, because they are allegedly directed to unpatentable subject matter;

WHEREAS, the above-listed cases brought by Natera, Inc. ("Natera"), Ameranth, Inc. ("Ameranth"), and VMware, Inc. ("VMware") are unrelated to each other;

WHEREAS, the Court heard oral argument in all the above-listed cases on September 30, 2020 after considering the parties' respective briefs and related filings;[1]

WHEREAS, the Court continues to find that its experimental procedure of addressing multiple Section 101 motions from separate cases in one hearing is an efficient use of judicial resources and a beneficial tool for resolving the merits of Section 101 motions;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that, with respect to the above-listed VMware case, Plaintiff's Rule 12 motion (C.A. No. 20-272 D.I. 79) is **DENIED**;

**IT IS FURTHER ORDERED** that, with respect to the above-listed Natera case, Defendant's Rule 12 motion (C.A. No. 20-125 D.I. 23) is **DENIED**; and

**IT IS FURTHER ORDERED** that, with respect to the above-listed Ameranth case, Defendant's Rule 12 motion (C.A. No. 20-518 D.I. 8) is **GRANTED**.

---

[1] Chief Judge Leonard P. Stark and Magistrate Judge Jennifer L. Hall jointly presided throughout the argument.  The Court adopts the full bench ruling and includes herein only certain portions of it.

The Court's Order is consistent with the bench ruling announced on a teleconference on October 2, 2020 (*see, e.g.*, C.A. No. 20-125 D.I. 59 ("Tr.") at ; C.A. No. 20-518 D.I. 28; C.A. No. 20-272 D.I. 96 ("Tr.") at 4-36):

> For the specifics on the legal standards that I have applied, I hereby adopt and incorporate by reference the legal standards as stated in the following:
>
> The Federal Circuit's decision in *Berkheimer*, 881 F.3d at 1360.[2] The Federal Circuit's statement of the law in *Aatrix*, 890 F.3d 1354.[3]  And I'm also incorporating by reference my discussion of the law as I recited at length at the end of the July 14th, 2020, 101 day that can be found in the transcript ruling on the docket, for instance, in a case called *Pivital IP vs. ActiveCampaign*, my Civil Action No. 19-2176-LPS at D.I. 27[4] . . . .
>
> . . . [L]et me turn to the cases in the order that they were argued a couple days ago.
>
> First, the *VMware vs. Cirba* doing business as Densify case.  The motion here is VMware's Rule 12(c) motion; and for the reasons I'm going to explain, that motion is denied.
>
> VMware's motion is directed to Densify's patent number 10,523,492, which I will just call the '492 patent.
>
> On the issue of a representative claim, I do start by noting that the parties in the VMware case have a dispute about whether claim 1 of the '492 patent is representative of all the claims put at issue in VMware's motion.
>
> VMware contends that claim 1 is representative.  Densify disagrees and would have me consider at least claims 1, 5, and 8.

---

[2] *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

[3] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357-59 (Fed. Cir. 2018).

[4] *Pivital IP LLC v. ActiveCampaign, LLC*, C.A. No. 19-2176-LPS D.I. 27 at 151-55.

In this case, the parties agreed that VMware, as the moving party, has [the] burden to show that claim 1 is representative.

I do not actually need to decide who has the burden and whether VMware has proven that claim 1 is representative. Instead, under the circumstances here, and particularly given my merits analysis, it is proper to assume that claim 1 is in fact representative.

As I am finding, as I will explain, that VMware has failed to meet its burden at step 1 with respect to claim 1 and because VMware contends that claim 1 is representative, I conclude that it is appropriate to consider only claim 1 and to deny the motion in full based solely on my evaluation of claim 1.

With respect to claim construction, both parties in this case insisted in their briefing and the prehearing checklist letter[s] that there is no claim construction dispute that must be resolved before the Court can resolve VMware's motion, but it's clear to me that the parties actually do have a dispute on a claim term that is material to the Section 101 analysis.

Specifically, the parties do dispute whether the claim term "system" in claim 1 is limited to "computer system" as Densify contends or is not so limited as VMware contends.

In this type of situation, where there is a claim construction dispute and a 101 motion pending, the Federal Circuit has explained at least at the 12(c) stage, the District Court must either adopt the nonmoving party's construction or resolve the dispute to whatever extent is needed to conduct the 101 analysis. That is from the *MyMail* decision of the Federal Circuit, 934 F.3d 1373.[5]

In its briefing, VMware repeatedly contends that, for example, claim 1['s] "systems" are not even limited to "computer system[s]." You can find that, for instance, in their opening brief at page 9, also pages 3 and 4, and again in their reply brief at page 1.

Then . . . at the hearing this week, VMware conceded that for purposes of evaluating the 101 motion, the Court could adopt Densify's implicit proposed claim construction, which is that "systems" in claim 1 is limited to "computer system[s]." So that is what I am doing. That is how I am, I suppose, "resolving for the

---

[5] *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

purposes of the motion" the claim construction dispute that I do think exist[s] between parties.

I am adopting for purposes of this motion the nonmoving party, that is, Densify's construction of "system" and therefore I am treating the representative claim as limited to "computer system."

All of that at least takes me to step 1 for the *Alice* or *Mayo* analysis.[6]  And at step 1, I conclude that . . . , as I have just said I will do for purposes of the motion, by construing "system" as limited to "computing system," that leads me to conclude that at step 1, claim 1 is directed to improving the functioning of computer technology.  That is, the claim is directed to improvement of computers as tools, not to using conventional computers as tools.

Therefore, VMware has failed to show that claim 1 is directed to an abstract idea.

My conclusion[,] I believe[,] is consistent [with] *Enfish*[7] and *Finjan*[8] and their progeny.  Namely, that claims that are focused on an improvement in computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity, are not abstract.

In other words, the '492 patent is directed to patent-eligible subject matter because it is directed to an improvement in computer functionality itself.  That is, designing an improved computer environment.

The patent claim, the representative claim that is, recites specific steps to accomplish the desired result, that being intelligent placement of source systems on target system[s], and the claims solve the technological problem arising in the computer context.

More specifically, the claims are directed to an improvement in the design of computer environment[s] through improved placement of computer systems, including virtual machines, using compatibility

---

[6] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Mayo Collaboration Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012).

[7] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

[8] *Finjan, Inc. v. Blue Coat Systems, Inc.*, 2018 WL 341882 (Fed. Cir. Jan. 10, 2018).

analyses, incorporating technical business and workload constraints.

The patent identifies the technological problem that exists only in a computer environment and claims solutions to it. The claims recite specific steps and not just any result.

Now, to counter this, VMware contends the claims are actually directed to the abstract idea of "analyzing data based on rules." And it's true that if that is what the claims were directed to, then VMware would meet its burden at step 1. Analyzing data based on rules has been found to be an abstract idea in cases such as *Electric Power Group*[9] and *Content Extraction*.[10] But in my view, that is just simply not a fair characterization of the representative claim here for reasons I have already tried to explain.

VMware also contends that the claimed method can be practiced manually by humans using pen and paper or just their mind. Such an inquiry is sometimes helpful to the 101 analysis, although it is not dispositive. And here, it cannot be and is not a basis for VMware to prevail on its motion given what I have already said.

At the hearing the other day, VMware relied heavily on the Federal Circuit['s] *BSG* decision[11] and my subsequent opinion in *Citrix v. Avi*[12] which itself relied on *BSG*. In my view, these comparisons are also unavailing. In *BSG*, the claims were found to be abstract at step 1 because their focus was guiding database users by presenting summary comparison information to users before they input data which the Federal Circuit said was not a method "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of" wide access databases.

Much, but not all of that, is a direct quote from *BSG Technologies*, 899 F.3d at 1286.

---

[9] *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016).

[10] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

[11] *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018).

[12] *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511 (D. Del. 2019).

In that case, BSG had argued that the claims['] focus was an improvement in database functionality, pointing to the purported benefit of the patent.

But the Federal Circuit explained that, "those benefits were not improvements to database functionality. Instead, they were benefits that flowed from performing an abstract idea in conjunction with the well-known database structure." Most of that is a quote from page 1288 of the opinion.

The Federal Circuit added that "an improvement to the information stored by a database is not equivalent to an improvement in the database's functionality."

Thereafter, in *Citrix vs. Avi Networks*, 363 F.Supp.3d at 511, I found that certain claims were abstract [at] step 1 because the patent there addressed a solution that was also not necessarily rooted in computer network[s].

I held there that, "While the claims arose in a technical context" – in that case, service availability in a computer network – "every technical advantage identified there by the patentee ultimately stemmed from the same generalized improved determination of availability that the use of a dynamic response time would provide in any other context." And much of that is from page 522 of that *Citrix* opinion.

In my view, *BSG* and *Citrix* do not change the outcome here with the '492 patent because for the reasons already explained, the benefits of the claim at issue in this case do not flow solely from performing an abstract idea.

Instead, as noted, claim 1 of the '492 patent is directed to an improvement in computer technology and is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of, in this instance, consolidation of computer systems.

This conclusion puts the case before me now squarely in the realm of *Enfish, Finjan*, and other cases such as *SRI*.[13]

Finally, the Court's conclusion is supported by and consistent with the analysis that I conducted in denying VMware's earlier Section 101 motion directed to Densify's '687 patent. . . . [A]s requested

---

[13] *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019).

by Densify and I don't believe opposed by VMware . . . I have taken judicial notice of the briefing and my ruling on eligibility of Densify's '687 patent in a related action in this court, Civil Action No. 19-742-LPS.

Given my conclusions here on step 1, that VM failed at step 1, the Court need not and will not proceed to step two.

So in conclusion, with respect to the VMware motion, that motion is denied. It is denied without prejudice to renew in a motion [for] summary judgment if VMware believes in good faith at that point in the case that it has a basis to renew its motion based on whatever happens in claim construction and the record evidence at that point.

So that is everything I had to say about VMware.

Let me move next to the second case that was argued, the *Natera vs. ArcherDX* case.

In that case, the defendant ArcherDX, who I may refer to as just "Archer" or "defendant[,]" has filed a Rule 12(c) motion which raises Section 101 as well as non-Section 101 issues.

I'm going to address all of those issues and for the reasons I'm going to explain, ArcherDX's motion is denied and it is denied in all respects.

With respect to 101, the 101 issues arise in connection with three of the four patents-in-suit. Specifically, for the record, the following three patents of Natera's: Patent [Numbers] 10,513,814; 10,557,172, and 10,590,482.

On the representative claim issue in this case, the Court agrees with the defendant that for purposes of the motion, and only for purposes of the motion, and only for purposes of the Section 101 issue in the motion, claim 1 of the '814 patent can be treated as representative of all claims of all three patents that are challenged by the motion.

As the defendant wrote in its checklist letter, D.I. 49 at page 1, "the Court need only determine the eligibility of claim 1 of the '814 patent as it will determine the eligibility of all claims in the '814, '172, and '482 patents."

I agree with that. All of the claims of the challenged '814, '172, and '482 patents appear to involve the same issues of validity and are substantially materially identical.

Each of these claims claim methods for amplifying and sequencing DNA that requires PCR amplification of target loci, a universal primer, and target specific primers. Thus, again, the Court will treat claim 1 of the '814 patent as a representative claim.

In this case, the parties agree that there is no claim construction dispute that needs to be considered in connection with the motion; and I agree with that.

Turning to step 1.

Archer has not shown that the claims are directed to the natural phenomenon of cell-free DNA. In my view, the claims here, as represented by claim 1 of the '814, . . . are method of preparation claims and therefore eligible for patenting. They are not method of detection claims which would not be eligible for patenting. They're also not methods of diagnosis claims.

As the Federal Circuit recently held in *Illumina*,[14] a patent directed to a method of preparation that exploits and does not otherwise claim a natural phenomenon is patent eligible. . . .

Considering the claim as a whole in light of the specification, it is, as I have said, in my view a claim directed to a method of preparation of cell-free DNA.

The claims here compare favorably to those that were upheld so recently by the Federal Circuit against a 101 challenge in *Illumina*. For instance, in *Illumina*, the natural phenomenon of cell-free DNA was simply sorted by size, and then the sorted DNA was analyzed, but the cell-free DNA itself was unchanged, and yet that claim was found to be patent eligible.

Here, the patented method includes multiple steps modifying the cell-free DNA using a specific process.

It seems to me then that if the claim at issue in *Illumina* was patent eligible, the claim being challenged here today also must be patent eligible.

---

14 *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 967 F.3d 1319, 1325-26 (Fed. Cir. 2020).

Further explanation of the comparison between Natera's claim and the ones upheld in *Illumina* is found in Natera's briefing; for instance, D.I. 27 at pages 15 to 16, and in Natera's slide 17 as shown at the hearing the other day.

Archer's motion largely turns on Archer's reading the representative claim as being a detecting claim. A claim directed, that is, to detecting a natural phenomenon, one that begins and ends with a natural phenomenon.

If this were the right reading of the claim, the claim would be non-patentable. We know that from cases like *Cleveland Clinic*[15] and *Ariosa*.[16]

But in my view, this view of the representative claim is not an accurate one. The word "detecting" or any form of it does not appear in the representative claim.

As Natera writes, for instance, in its opening brief at 17, "Natera's patent claims do not recite detecting, let alone detecting a naturally occurring cell-free DNA."

To the extent Archer is asking me to read "detecting" into the claim, that is at least an implicit claim construction issue and would pre[s]ent a dispute [needing to be] resolved. Of course, Natera insists that these are not "detecting" claims.

That implicit claim construction dispute is not a dispute that has been briefed or one that I could resolve in favor of the defendant at this stage. So even if I were to view it as a claim construction dispute, it would be just another reason to deny the defendant's motion.

I recognize there are references to "detecting" in the specification but, again, not in the claim. And, again, I'm not in a position today to construe the claim over Natera's objection as having a "detection" limitation in the claim.

Nor am I persuaded, based on what has been presented to me thus far, to do that. Instead, my analysis of the claims in light of the specification persuades me that the claims are directed to an

---

[15] *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013 (Fed. Cir. 2019).

[16] *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015).

improved method of synthesizing cfDNA, cell-free DNA, that exploits the natural phenomenon of certain primers dimerized less frequently than others.

Unlike in *Ariosa*, the claims here do not begin and end with a natural phenomena for at least the reason that in practicing the claimed method, one does not end up with the same and only thing that one had when one started to practice the claim.

It is true the Federal Circuit held in *Genetic Tech.*, 818 F.3d at 1372[17] – a case that Archer also relies on – . . . that a method for detection comprising amplifying genomic DNA with a primer pair and analyzing the amplified DNA sequence is not patent eligible. But, again, in my view, the representative claim is not a detecting claim, so what was at issue in *Genetic Tech.* is just not what [i]s at issue here.

In sum, the representative claim does not claim cell-free DNA or modified cell-free DNA, nor does it claim detection of cell-free DNA or modified cell-free DNA. Instead, it claims a method of preparation of cell-free DNA through a method involving manipulation of a natural phenomenon and man-made steps, including steps which create pieces of DNA that do not exist in nature.

The claim then, like that upheld in *Illumina*, is directed to patent eligible subject matter.

As I have found that the defendant has not met its burden at step 1, the Court will not proceed to step 2. Also, again because claim 1 of the '814 patent is a representative claim, my decision with respect to this claim applies to all of the other claims ArcherDX challenges in its motion.

That's it on the 101 issues. Let me turn to the non-101 issues in Archer's motion.

First, I'll note that there is a pending request from the plaintiff that I take judicial notice of certain documents.

I hereby grant the judicial notice motion

. . .

---

[17] *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1372 (Fed. Cir. 2016).

Now turning to the issues pressed by the defendant.

The first relates to the safe harbor provision of [35 U.S.C. §] 271(e).

Taking the well-pled allegations of the complaint as true, as the Court must, there are factual disputes that preclude granting this portion of Archer's motion. In other words, Natera has plausibly stated infringement by the two accused products at issue in this part of the motion.

. . .

In sum, the burden was on Archer to show that the safe harbor protects all the alleged activities with respect to these two products, and Archer has failed.

The next issue in the motion is declaratory judgment jurisdiction.

Here, the defendant contends that the Court lacks subject matter jurisdiction to grant a declaratory judgment with respect to infringement of the patents-in-suit by Stratafide and PCM products.

In my view, the defendant is not correct. Instead, the facts alleged show a substantial controversy between parties having adverse legal interest[s], . . . sufficient immediacy[, and] reality.

. . .

Finally are the disputes about the ArcherMET product.

The Court finds that Natera has adequately and plausibly alleged that Archer has used the patented method in the U.S. at least by conducting quality control on its ArcherMET product here in the United States where the accused product is allegedly manufactured before exporting these products to Japan for sale.

. . .

With that, I conclude by reiterating ArcherDX's Rule 12(c) motion is denied in all respects.

That takes me at long last to the third case that was argued, *Ameranth vs. Olo*. This is Olo's 12(b)(6) motion, raising only 101 issues.

For the reasons I am going to explain, Olo's motion is granted.

Olo's motion is directed to Patent No. 9,747,651 (the '651 patent), which describes an information management and synchronous communications system for use in the hospital services industry.

With respect to which claims I have to consider, at this point there is no dispute, the parties have agreed, including through a stipulation [and] supplemental letters, that I should decide the patent eligibility of the following claims which are the totality of the asserted claims in the now amended complaint: claims 1, 3, 6, 9, 10, and 11.

With respect to claim construction, there is no dispute for purposes of the motion. Ameranth has proposed certain constructions, and Olo agrees that I should adopt those proposed constructions for purposes of evaluating the motion, and I am doing so, all consistent with what the Federal Circuit has set out is an acceptable method for proceeding, for instance, as described in the *Two-Way Media* decision, 874 F.3d at 1338.[18]

I find that even applying plaintiff's proposed construction[s], the challenged claims are not patent eligible. The claims even construed as plaintiffs wish are result focused and directed to an abstract idea and fail to provide an inventive concept.

Let me go through the *Alice/Mayo* analysis to explain how I got to that conclusion.

First at step 1. As defendants contend, the Court concludes that the asserted claims are directed to the abstract idea of "communicating hospitality-related information using a system that is capable of synchronous communications and messaging."

That same abstract idea applies to all six claims the Court is reviewing.

Ameranth counters instead that the claims are directed to, "rule capable, intelligent automated assistant or IAA systems for use with remote wireless handheld computing devices and the Internet."

---

[18] *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

I disagree.  The IAA systems are merely one feature of the invention claimed.  The specification makes it clear that the invention is not directed to those components.  The specification identifies the provision of an improved information management synchronous communication system and method as a principle object of the invention.  For that, I would cite to column 3 of the patent at lines 1 to 3.

Here, and for the reasons I have already stated, the claims are similar to those of the related patent[s] that have already been found abstract by the Federal Circuit in two other cases: *Apple Inc. vs. Ameranth Inc.*, 842 F.3d 1229,[19] including at page 1234, which the Federal Circuit decided in 2016, as well as *Ameranth Inc. vs. Domino's Pizza LLC*, 792 F. App'x 780,[20] including at page 786, which the Federal Circuit decided in 2019.

Like the claims at issue in those cases . . ., the claims here provide only results[-] focused and functional language without providing any specifics as to how to carry out the desired goal.

And we know from the *Apple* and *Domino's Pizza* decision[s] that that is not enough to become patent eligible.  I specifically cite to 842 F.3d at 1241 as well as 792 F. App'x at 786.

The claims here, like those there in those other two cases, state that they solve the problem but don't describe how.

Ameranth tries but fails to distinguish the earlier Federal Circuit cases, *Apple* and *Domino's*[,] by pointing to the addition[s] in the specification.  Specifically, the addition of Figure 10 which itself points to communication conversion, and by further pointing to text relating to Figure 10 which has been added to the specification, such as in column 18.  But Figure 10 [and] the new text of the specification about it do not in my view change the Section 101 outcome.  The new material is just more high level results[-]focused ideas.

In the '651 patent-in-suit, just like the related patents that were already invalidated, neither the claims, nor the specification describe[s] any specific programming steps for the IAA system or the free format messaging, nor do they claim an improvement to computer functionality.

---

[19] *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1234 (Fed. Cir. 2016).

[20] *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 786 (Fed. Cir. 2019).

Ameranth makes much of the claimed invention in this case being able to purportedly concurrently handle free and fixed format messages, but the claims don't say anything about this or explain how it is accomplished.

Further support for the Court's conclusion is the patent's description of the problem being solved as one of computerizing the traditional pen-and-paper ordering and reservation system practiced in the hospital and restaurant industries, but we know that automation of [a] business practice is not patent eligible. That is stated in many cases, including the *Customedia* decision of the Federal Circuit this year, 951 F.3d at page 1365.[21]

These claims are not really directed to an improvement to computer functionality but instead automate pen-and-paper traditional business practices, specifically the practices of ordering and making reservations. I cite as support, among other things, the discussion in column 1 of the patent at line[s] 38 to 46. This is not a computer only problem.

The defendant[] ha[s] met its burden at step 1. So let me turn to step 2.

At step 2, the Court must determine if there is an inventive concept that is something more than the application of an abstract idea using well-understood, routine and conventional activities previously known to the industry. That articulation of step 2 can be found in *Cellspin*, 927 F.3d at 1316,[22] or at *Aatrix*, 882 F.3d at 1128.[23]

The defendant has met its burden to show that there is no inventive concept in any of the challenged claims at issue in the motion.

Ameranth contends that factual disputes preclude[] siding with Olo at step 2, but I disagree with that.

In making this argument, Ameranth relies heavily on the Court's obligation to take as true the well-pled factual allegations in its

---

[21] *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020).

[22] *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019).

[23] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

complaint, and Ameranth relies equally heavy, if not more so, on the declaration of its expert, Dr. Valerdi, an expert report that is incorporated into the complaint.  But in many material respects, the factual allegations and analysis of Dr. Valerdi [are] contradicted by the patent itself.

When there is a conflict between the materials prepared for litigation, including complaints and expert report[s], and the intrinsic evidence of the patent itself, the Court must resolve that conflict in favor of the patent itself and is not obligated to credit the plaintiff's contradictory allegation. . . .

Additionally, many of the factual allegations on which plaintiff relies are merely conclusory and do not need to be credited for this reason as well.

Ameranth contends that even if the specific claim limitations and components with which the claim is practiced are conventional, the ordered combination of these known components was not conventional, routine and well understood at the patent's priority date.

This argument is unavailing in the context of this case.  The plaintiff really has not actually pointed to any unconventional ordered combinations, and the patent doesn't explain how one would perform it in any event.

There is simply here no basis to conclude that the practice of the abstract idea . . . with what the patent repeatedly describes as "typical" – and that's a quote, "typical" computer hardware [–] using "well-known" software programming in the order that the claim sets out, an order which is logical and expected . . . [is] anything other than . . . conventional, well understood, and routine. And I think it is important to understand just how repeatedly the specification describe[s] the invention as using typical hardware and commonly known software programming steps.  You can see this in column 6, in column 7, in column 13 of the patent.

In this regard, the case is analogous with what the Federal Circuit described in *Aatrix*, 890 F.3d at 1356: "In a situation where the specification admits the additional claim elements are well understood, routine and conventional, it will be difficult, if not impossible, for patentee to show a genuine dispute."

The best comparisons here again are between the '651 patent and the claims from the related patents that were found ineligible for

patenting in *Apple* and *Domino's*, cases in which the Circuit called out that the specification "expressly recited that the hardware needed was typical and that the programming steps were commonly known," and that the patent provided no disclosure of how the invention would be technologically implemented.

That is from *Apple*, 842 F.3d at 1244, and I would say also see *Domino's*, 792 F. App'x at 788.

In *Domino's*, notably, the Federal Circuit found the claims ineligible and rejected the patentee's contentions at step 2, even though the record there contains supporting declarations for the plaintiff, just as I have here in the form of Dr. Valerdi's declaration.

In this case, Dr. Valerdi's declaration contradicts the specification and therefore is not to be credited and does not change the outcome here.

In this regard, the situation I confront is not like *Cellspin*, the case that Ameranth compares to[, where] there was also a complaint incorporating by reference an expert declaration.

At best, the allegations in the amended complaint [here] could maybe support an inference that the technology was groundbreaking and innovative. But if, as here, at best for the patentee, the abstract idea supplies the inventive concept, then the patent challenger has prevailed at step 2, no matter how groundbreaking the advance. And that is from *Trading Technologies*, 921 F.3d at 1093.[24] Another 2019 decision of the Federal Circuit.

Let me just briefly address each of the specific claims. They all have, as I have said, the same abstract idea. They're directed to the same abstract idea. None of them add[s] an inventive concept to that abstract idea.

Claim 1 recites a system capable of real-time communication of hospitality-related information between the system component[s], which include at least two remote wireless handheld computing devices.

---

[24] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019).

This, in my view, is simply the abstract idea implemented with conventional activity. The claim limitations just describe a desired result but not how to accomplish it.

Claim 3 recites [a] system capable of real-time communication of hospitality-related information between the system components which include at least three remote wireless handheld computing devices.

This is really just claim 1 all over again with one additional handheld remote wireless computing device. This doesn't materially affect the analysis.

Claims 6, 9, 10 and 11 are all dependent of claim 1.

Claim 6 relates to hospitality application, including food or drink ordering integrated with customer rewards.

Claim 9 relates to a mobile application operating on a handheld device interface with a back office.

Claim 10 talks of a frequent customer mobile application used to interface with a back office.

Claim 11 relates to a system enabled so that its staff members can utilize only a wireless handheld smartphone for substantially all interactions with the back office.

In my view, the additional limitations in each of these claims are routine and conventional and therefore provide no inventive concept. They again just add more high-level ideas but no discussion of how to implement or accomplish the goal.

So in conclusion, the Court will grant Olo's motion, and it will be with prejudice. Ameranth has already amended its complaint. It did so after seeing Olo's contentions, indeed [after] full briefing under Section 101. There is no need to give Ameranth yet another opportunity to amend. And in any event, given my conclusions and the analysis set out at some length here, any amendment would be futile.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE